**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

MR. AMOS GABRIEL HICKS,

               Plaintiff,

v.                                  CIVIL ACTION NO.   2:13-cv-27830

STEVEN D. CANTERBURY, et al.,

               Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are two Motions to Dismiss Plaintiff's Amended Complaint, one by Defendants Steven D. Canterbury and Booker T. Stephens, (ECF No. 26), and the other by Defendant Francine Spencer, (ECF No. 30).   By Standing Order entered on April 8, 2013 and filed in this case on November 5, 2013, this action was referred to Magistrate Judge Dwane L. Tinsley for submission of proposed findings of fact and recommendation for disposition.   (ECF No. 5.)   On August 12, 2015, Magistrate Judge Tinsley filed proposed findings of fact and recommendation for disposition ("the PF&R"), in which he recommends that the Court grant the defendants' motions and dismiss this action for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.   (ECF No. 60.)   Plaintiff filed timely objections to the PF&R (the "Objections") on September 24, 2015.   (ECF No. 64.)

For the reasons discussed herein, the Court **OVERRULES** the Objections, (*id.*), **ADOPTS** the PF&R, (ECF No. 60), to the extent it is consistent with this Memorandum Opinion and Order,

**GRANTS** the motions to dismiss, (ECF Nos. 26 & 30), **DISMISSES WITHOUT PREJUDICE** the case, and **DIRECTS** the Clerk to remove this action from the Court's docket.

## I.     Background

This is a civil rights action, brought pursuant to 42 U.S.C. § 1983, alleging constitutional deprivations at the hands of various McDowell County, West Virginia court administrators on the basis of Plaintiff's inability to procure portions of his criminal trial transcript.   This action was originally filed in the Circuit Court of Kanawha County, West Virginia in September 2013.   (ECF No. 3-2 at 1–27.)   That court dismissed the claim for lack of jurisdiction, (ECF No. 6 at 4–6), and the plaintiff improperly attempted to remove the case to this Court on November 4, 2013, (ECF No. 3.)   On April 9, 2014, Plaintiff filed a motion to amend his original pleadings on the following basis: "because this Complaint is now in Federal Court Plaintiff has found in [sic] necessary to update facts, and alter case laws including Jurisdiction and other relevant applicable law." (ECF No. 6 at 2.)   Attached to this motion was a proposed "Amended Petition."   (ECF No. 6-1.)   By Order entered May 9, 2014, Magistrate Judge Tinsley construed the Plaintiff's Notice of Removal, (ECF No. 3), and Amended Petition, (ECF No. 6-1), as a civil rights complaint, and ordered the matter to proceed on the plaintiff's "proposed Amended Complaint."   (ECF No. 7 at 3.) Accordingly, Plaintiff's "Amended Civil Rights Complaint under 42 U.S.C. § 1983," ("the Complaint"), was docketed on the same day, forming the operative complaint on which these proceedings are based.   (ECF No. 8.)

Plaintiff is currently serving a sentence of life imprisonment without mercy at Mount Olive Correctional Complex.   (ECF No. 64-2 (Plaintiff's State Habeas Petition) at 3.)   Plaintiff was sentenced in the Circuit Court of McDowell County by the Honorable Booker Stephens in October

2009 following July 2009 convictions for first degree murder, malicious assault, and conspiracy. (*Id.*)   Plaintiff appealed his conviction to the West Virginia Supreme Court of Appeals ("WVSCA").   (ECF No. 8 at 5.)   In preparation for this appeal, Plaintiff's trial counsel, Michael Gibson, made two requests for portions of Plaintiff's criminal trial transcript to Janet Murphy, court reporter for Judge Stephens.[1]   (*Id.*)   The record does not indicate the court reporter's response to these requests, but Plaintiff alleges that at least some of the requested transcripts were not provided.[2]   Plaintiff's specific allegation is that the court's failure to provide him with the requested jury instructions "kept the Plaintiff from raising Instructional Error on Direct Appeal" and "effectively denied the Plaintiff the Constitutional right to a functional Appeal and the right to his personal freedom."   (*Id.*)   It should be noted from the outset that, as the reference to a denial of personal freedom indicates, Plaintiff views his continued confinement in light of his inability to access the full trial transcript as illegal and unconstitutional.

Ultimately, Plaintiff's appeal to the WVSCA was denied and his conviction was affirmed in April 2011.   (*Id.* at 6.)   As part of his attempt to secure habeas corpus review of his conviction in West Virginia state court, Plaintiff alleges that he filed a request seeking portions of his trial transcript with Carolyn DiLorenzo, the new court reporter for Judge Stephens.[3]   (ECF No. 8-1 (Plaintiff's "Appendix B") at 5.)   In response to this request, the Circuit Court of McDowell

---

[1] On October 30, 2009, Mr. Gibson filed a request for transcription of the plaintiff's (presumably the State's) opening statement, the Court's October 5 opinion addressing Plaintiff's Rule 404(b) motion, the Plaintiff's Motion for Verdict of Acquittal and New Trial, the jury instructions at trial, the sentencing proceedings, and all testimony given at the trial spanning from July 20-24, 2009.   (ECF No. 8-1 (Plaintiff's "Appendix A") at 2.)   On November 24, 2009, Mr. Gibson made another request for the plaintiff's (presumably the State's) closing argument from trial.   (*Id.* at 3.)

[2] Plaintiff does not say whether any of the requested portions of the trial transcript were ever provided in preparation for the direct appeal.   He does allege, however, that the requested jury instructions were not provided.   (ECF No. 8 at 5.)

[3] Plaintiff requested "All Proceedings" not previously prepared, specifically including jury voir dire, the defendant's opening argument, the oral instructions given to the jury, and "[a]ny hearings except 404(b)."   (ECF No. 8-1 at 5.)

County appointed Plaintiff counsel in order to pursue his state habeas petition.   (ECF No. 8 at 6.) Plaintiff's current appointed counsel in the matter is Phillip LaCaria.   (*Id*.)   Eventually Ms. DiLorenzo sent Mr. LaCaria a letter stating that Janet Murphy, the court reporter at the time of Plaintiff's trial, had passed away and that several tapes and transcript materials, including the tapes necessary to prepare the portions of the transcript requested by Plaintiff, had been lost as a result.[4]

Plaintiff received a copy of Ms. DiLorenzo's letter from his counsel on November 9, 2012. (*Id*.)   Although Plaintiff's state habeas corpus case remains pending in McDowell County, he nonetheless initiated this civil rights complaint in the somewhat convoluted manner described above.   Ms. DiLorenzo's letter, stating the impossibility of creating a transcript for certain portions of the 2009 criminal trial, provides the crux of Plaintiff's Complaint, which alleges that the letter "proves that no transcripts exist from which the Plaintiff can institute his Constitutional Rights to Appeal his conviction and his Constitutional Right to make and file a Habeas Corpus." (*Id*.)   He alleges violation of his Fourteenth Amendment rights, pursuant to which Plaintiff asserts he is clearly entitled to free transcripts of his trial proceedings.[5]   (*Id*. at 9–10.)   Plaintiff's suit is primarily targeted at Janet Murphy, the party Plaintiff alleges is directly responsible for the missing

---

[4] The letter provided, in relevant part:

> Subsequent to my employment of October 1, 2010, as Judge Stephens' official reporter, Mrs. Murphy passed away.  Apparently, Mrs. Murphy had worked on various transcripts from her residence, and, following her untimely death, her husband has disposed of materials that were located in her home office.

> I have searched through all of the tapes that are located in my office, and, unfortunately, there are no tapes available from the trial of this matter from which I can prepare transcripts of the portions of the trial that you have requested.   Accordingly, I am not able to comply with your request as set forth in your letter.

(ECF No. 8-1 (Plaintiff's "Appendix C") at 7.)

[5] In addition to his invocation of the Fourteenth Amendment, Plaintiff alleges that West Virginia Code § 51-7-7, which requires that indigent defendants be furnished with free transcripts upon request for purposes of appeal, has "Constitutionalized" the right for a person in Plaintiff's position to receive a transcript.   (ECF No. 8 at 9.)

portions of Plaintiff's trial transcript.  Although Ms. Murphy has passed away, Plaintiff brings claims against her estate, alleging that she failed to abide by her duty as a court reporter and that the relevant tapes have been "destroyed" by Ms. Murphy's husband.[6]  (*Id*. at 24.)  Plaintiff's claims against the other defendants are premised on supervisory liability, arguing that the failure of the various court administrators to supervise Ms. Murphy and preserve the relevant court records amounted to "deliberate indifference" to Plaintiff's constitutional rights.  (*Id*. at 17.)

The first defendant is Steven Canterbury, the Administrative Director for the West Virginia Supreme Court of Appeals.  (ECF No. 27 (Defendants' Canterbury and Stephens Memorandum in Support of Motion to Dismiss) at 1.)  Plaintiff alleges that Mr. Canterbury has "failed to make adequate rules governing Court Reporters to make sure records are not tampered with, are stored properly, and are not permanently destroyed."  (ECF No. 8 at 17.)  Essentially, Plaintiff argues that Mr. Canterbury is liable for the lost transcript because he was derelict in his duty to supervise the circuit court staffs and displayed "deliberate indifference" to the high risk that court reporters would destroy trial transcripts.  (*Id*. at 18.)

The second defendant is Booker Stephens ("Judge Stephens"), the presiding judge at both Plaintiff's trial and ongoing state habeas proceeding.  Plaintiff alleges that Judge Stephens is charged with the "direct supervision" of the circuit clerk and the court reporters, and his failure to create adequate controls to ensure that his court reporters turned over trial records imposed a "pervasive and unreasonable risk" of constitutional injury to the rights of citizens such as Plaintiff. (*Id*. at 20.)  Further, Plaintiff alleges that Judge Stephens' response upon finding out about Ms.

---

[6] Plaintiff's Complaint currently asserts a claim against an unidentified "John Doe" defendant.   The PF&R concluded that, based on the nature of the motions before the Magistrate Judge, the plaintiff "seeks to substitute parties and serve process on Bill Murphy, the husband of Janet Murphy, in place of the 'John Doe' defendant, and potentially as the legal representative of the estate of Janet Murphy."   (ECF No. 60 at 9.)

Murphy's missing records, including failing to notify the plaintiff and "deliberately" stalling Plaintiff's present state habeas proceedings, demonstrate "deliberate indifference" to Plaintiff's constitutional rights.   (*Id*. at 21.)

Plaintiff next brings claims against Francine Spencer, the McDowell County Circuit Clerk. His allegations against Ms. Spencer follow a similar pattern to those against Mr. Canterbury and Judge Stephens: Ms. Spencer is in charge of overseeing court records, and her failure to adequately do so in the face of the high risk that such records would be lost and destroyed evinced "deliberate indifference" to Plaintiff's constitutional rights.   (*Id*. at 23.) Specifically with respect to Ms. Spencer, Plaintiff alleges violations of various statutory provisions in the West Virginia Code regulating a clerk's duty to keep and retain records.   (*Id*. at 22.)   Plaintiff further alleges that all named defendants conspired and colluded "to hide from the Plaintiff the facts that his transcript, tapes and notes were missing and now conspire and fail to give a remedy known to exist at law." (*Id*. at 25.)

Finally, Plaintiff alleges that all defendants are liable under a theory of vicarious liability for failure to take steps to remediate the constitutional deprivations being suffered by Plaintiff as the result of the missing transcript portions.   (*Id*. at 26.)   On this theory, Plaintiff alleges that all defendants,

> individually by participation, and under the color of law, and under the cover of their offices, positions and stations in life, have failed to take the necessary actions to insure that the legislative mandates are followed or perpetuated which is "gross negligence," "intentional deliberate indifference," and "arbitrary recklessness" and total disregard for Human Rights, and those protected as Citizen's Rights by Constitution.

(*Id*. at 27.)

6

The pleadings do not make clear the connection between the alleged constitutional deprivation and the ultimate remedies that Plaintiff seeks.   They are, however, relatively emphatic on two points: (1) that Plaintiff's inability to access his full trial transcript entitles him to a new trial and renders his continued confinement unconstitutional[7], and (2) that Plaintiff's primary impetus for filing the instant federal action is his dissatisfaction with the pace at which his state habeas corpus case is proceeding.[8]   In his prayer for relief, Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages.   Specifically, he seeks a declaration that his rights have been violated[9] and "preliminary order and permanent injunction" ordering that Judge Stephens (1) "adjudicate pending Motions," and (2) give Plaintiff appropriate relief by "reversal of convictions, vacation of sentences and a New Trial awarded."   (*Id*. at 28.) Plaintiff further seeks punitive damages against all defendants for "subjecting him to cruel and

---

[7] *See* ECF No. 8 at 8 (basing his claims against Judge Stephens, in part, on his failure to "initiate a remedy, by reversal of convictions, vacation of sentences and holding a new trial as required by law"); *id*. at 9 (beginning discussion of "Legal Claims" by noting that his "personal and civil rights are being violated on a daily basis by his illegal and unconstitutional incarceration"); *id*. at 10 (arguing that "failure to furnish free transcript when ordered renders sentence void"); *id*. at 18 (alleging that destruction of transcripts denied him the right to appeal "thus resulting in [Plaintiff's] illegal detention in a Correctional Complex for life without recourse"); *id*. at 25 (denial of ability to file appeal "resulted in the Plaintiff being in prison for more than (8) eight months in a hostage situation created by the Respondents et al").

[8] *See* ECF No. 8 at 12 (emphasizing that the defendants in this case had been aware of the missing transcripts (and thus the constitutional violation at issue) for seventeen months at the time of Plaintiff's filing); *id*. at 13 (noting that his attorney "has been unable to get even a Motion Hearing date set due to the Court and Prosecutor malingering"); *id*. at 14 (noting delay in the holding of an evidentiary hearing in the state habeas proceedings and noting that the "extraordinary amount of time" allowed to the State to respond to Plaintiff's allegations "defies due process"); *id*. at 16 (alleging that the Circuit Court of McDowell County is "blocking" Plaintiff's FOIA request and arguing this delay "is forcing this Plaintiff to file a Motion for Order of this Court for the same documents needed in this action"); *id*. at 21 (alleging that Judge Stephens "has stalled deliberately, and with malice" proceedings that would establish his "deliberate indifference" to constitutional rights through a pervasive failure to preserve trial transcripts).

[9] Plaintiff alleges a violation of rights secured "under the Constitution and Laws of this State of West Virginia" as well as violations of the federal constitution.   The Court does not construe this to be an independent claim for relief under either the West Virginia Constitution or state statutory or common law.   The Complaint as a whole is clearly styled as a § 1983 action, which provides a cause of action only for violations of federal law.   (*See* ECF No. 8 at 1 (presenting action as "Plaintiff's Petition as Civil Rights Complaint – 42 U.S.C. § 1983"); ECF No. 64 at 1 (emphasizing that "[t]his action is being presented pursuant to 42 U.S.C. § 1983 as a civil rights action against a number of parties, denying civil rights to Plaintiff, in several ways").)   Accordingly, the Court construes the Complaint as alleging federal constitutional claims only.

unusual punishment, false imprisonment, living under constant threat of violence to the person," and compensatory damages in the form of $1,000 per day of incarceration "since the time the violation was recognized by the Court."   (*Id*.)   Finally, the plaintiff seeks general and foreseeable damages flowing from the constitutional violations alleged.   (*Id*.)

In response, Defendants Canterbury and Stephens filed a motion to dismiss, (ECF No. 26), arguing for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on numerous bases (ECF No. 27 at 1.)   Specifically, these defendants assert that their sovereign immunity under the Eleventh Amendment creates a jurisdictional bar to Plaintiff's claims against the defendants in their official capacities, (*id*. at 9), and that qualified immunity shields them from Plaintiff's individual capacity claims.   (*Id*. at 16.)   Further, Defendants assert that the Plaintiff's failure to exhaust state remedies requires this Court to abstain from hearing this case, (*id*. at 9), and that his failure to exhaust statutory remedies associated with missing transcripts further bar his claim.   (*Id*. at 6.)   Defendants also assert that vicarious liability is not a recognized theory of liability under § 1983, and that Plaintiff has failed to sufficiently state a claim for supervisory liability.   (*Id*. at 11.)   Finally, Judge Stephens asserts judicial immunity as an absolute bar to liability relating to judicial matters.   (*Id*. at 13.)

Defendant Spencer also filed a motion to dismiss, pursuant to Rule 12(b)(6).   (ECF No. 30.)   This motion asserts that Plaintiff's Complaint fails as a matter of law and that Defendant Spencer is entitled to qualified immunity.   (ECF No. 31.)

In the PF&R, the Magistrate Judge did not endorse any of the several arguments for dismissal made in the Defendants' motions.   The PF&R did recommend dismissal, but on two grounds not raised by any of the defendants.   The first ground is the doctrine announced by the

Supreme Court decisions in *Preiser v. Rodriguez*, 411 U.S. 475 (1973) and *Heck v. Humphrey*, 512 U.S. 477 (1994), concerning the intersection of habeas corpus and § 1983.   The second is the abstention doctrine, premised on comity and deference to state proceedings, announced in *Younger v. Harris*, 401 U.S. 37 (1971).   Plaintiff timely filed the Objections on September 24, 2015. (ECF No. 64.)   As such, both the PF&R and the Motion are fully briefed and ready for disposition.

## II.   Legal Standard

### A.      Review of the PF&R

The Court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."   28 U.S.C. § 636(b)(1)(C).   However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge "when neither party objects to those findings."   *Thomas v. Arn*, 474 U.S. 140, 150 (1985).   In addition, the Court need not conduct a de novo review when a petitioner "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Id.*   In reviewing those portions of the PF&R to which Plaintiff objected, the Court will consider the fact that Plaintiff is acting pro se and his pleadings will be accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).

### B.      Motion to Dismiss

As noted above, the PF&R states two grounds for dismissal, neither addressed by the parties' briefing.   The first, by operation of the *Preiser/Heck* doctrine, is failure to state a claim pursuant to Rule 12(b)(6).   (ECF No. 60 at 19.)   The second, by operation of the *Younger*

9

abstention doctrine, is lack of subject matter jurisdiction pursuant to Rule 12(b)(1).[10]   (*Id.*)   As will be described below, the Court affirms the PF&R's recommendation to dismiss Plaintiff's Complaint on *Heck* grounds, and thus does not consider the alternative recommendation for *Younger* abstention.   Although the limitation on § 1983 actions announced in *Heck* is not jurisdictional, *Okoro v. Bohman*, 164 F.3d 1059, 1061 (7th Cir. 2006) (Posner, J.), a district court is entitled to *sua sponte* dismiss a case that is barred by *Heck*.   *See Knowlin v. Thompson*, 207 F.3d 907, 908–09 (7th Cir. 2000); *Higgins v. City of Tulsa, Okla.*, 103 F. App'x 648, 650–51 (10th Cir. 2004).   When a § 1983 action is barred by *Heck*, the legal effect is that the action is not cognizable, and thus fails to state a claim.   *See Ballenger v. Owens*, 352 F.3d 842, 847 (4th Cir. 2003) (citing *Heck*, 512 U.S. at 489).   The Court will thus analyze the *Heck* issue presented by Plaintiff's Complaint under the familiar 12(b)(6) standard, considering only the pleadings and exhibits offered by the plaintiff.

Rule 12(b)(6) affords opposing parties the opportunity to test the legal sufficiency of the complaint.   A motion to dismiss under that rule does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."   *Republican Party v. Martin*, 980 F.2d 943,

---

[10] In the PF&R, the Magistrate Judge noted that, because *Younger* abstention was appropriate, "this Court lacks subject matter jurisdiction over these claims."   (ECF No. 60 at 18.)   However, *Younger* abstention addresses the scenario where a court having proper subject matter jurisdiction over a claim declines, for policy reasons, to exercise that jurisdiction and abstains from hearing claims that would otherwise be properly presented.   *See Beam v. Tatum*, 299 F. App'x 243, 246 (4th Cir. 2008) ("*Younger* abstention requires a federal court to abstain from interfering in state proceedings, *even if federal subject matter jurisdiction exists*, if [certain factors are present]" (emphasis added)); *cf. Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (noting that Supreme Court precedent "makes clear that whether a court has subject-matter jurisdiction over a claim is distinct from whether a court chooses to exercise that jurisdiction").   As such, the PF&R's conclusion as to *Younger*'s effect on this court's subject matter jurisdiction is "technically incorrect."   *Nivens v. Gilchrist*, 444 F.3d 237, 247 n.7 (4th Cir. 2006).   Rather, it is the case that "*Younger* abstention 'does not arise from lack of jurisdiction in the District Court, but from strong policies counseling against the exercise of jurisdiction where particular kinds of state proceedings have already been commenced.'"   *Id.* (quoting *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 626 (1986)).   Accordingly, the Court is not required to address the Magistrate Judge's *Younger* recommendation as a threshold issue of subject matter jurisdiction.

952 (4th Cir. 1992).   Rather, it serves the crucial role of "defining issues for trial and for early disposition of inappropriate complaints."   *Francis* v. *Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citing 5 Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure*, § 1202 (3d ed. 2004)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim for relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).   This requires the Court to utilize a two-pronged approach.   First, it must separate the legal conclusions in the complaint from the factual allegations.   Second, assuming the truth of only the factual allegations, the Court must determine whether the plaintiff's complaint permits a plausible inference that "the defendant is liable for the misconduct alleged."   *Id*.   The plausibility standard requires more than factual allegations that are "merely consistent with" liability.   *Id*.   (quoting *Twombly*, 550 U.S. at 557).   Labels, conclusions, and a "formulaic recitation of the elements of a cause of action" will not do.   *Twombly*, 550 U.S. at 555.   What is required are well-pleaded factual allegations.   A motion to dismiss will be granted if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief."   *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

In civil rights cases against government officials, the "complaint can survive a motion to dismiss only if it . . . 'alleges the specific conduct violating the plaintiff's right, the time and the place of that conduct, and the identity of the 'responsible officials.'"   *Preast v. McGill*, 65 F.Supp.2d 395, 403 (S.D. W. Va. 1999) (quoting *Colburn v. Upper Darby Twp.*, 838 F.2d 663,

11

666 (3d Cir. 1988)); *cf. Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 288 (4th Cir. 2012) (noting that *Iqbal* and *Twombly* "require more specificity from complainants in federal civil cases than was heretofore the case").

## III.    Discussion

Plaintiff objects to Magistrate Judge Tinsley's PF&R on five grounds.   Plaintiff's first and primary contention, and the issue that the majority of the Objections address, is that the PF&R is "based on '<u>incomplete supporting facts</u>' and '<u>incomplete supporting documentation</u>,' not adequately giving Plaintiff a fair review thus denying due process and equal protection of law." (ECF No. 64 at 2.)   Plaintiff latches on to certain portions of the PF&R in which the Magistrate Judge mentions the absence of certain documents in the record, and takes the opportunity to extensively rehash the arguments made in his initial complaint and file several exhibits intended to supplant the record.   Some of the newly filed exhibits were already included in the record before Magistrate Judge Tinsley, and in most cases the newly filed exhibits are not relevant to the PF&R's ultimate recommendation to dispose of Plaintiff's claims on *Heck/Preiser/Younger* grounds.[11]

Plaintiff's second objection challenges the PF&R's finding that Plaintiff failed to allege sufficient facts to state a claim pursuant to Rule 8 of the Federal Rules of Civil Procedure.   As mentioned above, the PF&R based its recommendation for dismissal on specific legal doctrines recognizing the impropriety of asserting § 1983 claims in certain situations.   Although, as discussed above, application of the *Heck/Preiser* doctrine would cause Plaintiff's Complaint to

---

[11] Plaintiff does attach as an exhibit his original and amended petitions for state post-conviction relief, which assert thirty six (36) grounds, including the inability to perfect an appeal or habeas petition resulting from the missing portions of the criminal trial transcript, for reversing Plaintiff's conviction and vacating his sentence.   (ECF 64-2 ("Appendix X" to Plaintiff's Objections) at 3–144.)

fail to state a claim as a matter of law, that failure is not based on factual insufficiency as Plaintiff appears to interpret the PF&R to find.

Objections three and four, on the other hand, contest more directly the actual bases for the PF&R's recommendations, at least to the extent the PF&R recommends abstaining on *Younger* grounds.   Plaintiff specifically objects to the PF&R's invocation of comity in deference to state court adjudication of these issues.   (ECF No. 64 at 11–12.)   Plaintiff argues that the McDowell County Circuit Court's delay in adjudicating his state habeas petition renders any potential relief before that body incomplete, thus necessitating federal intervention.   (*Id*.)   Plaintiff further alleges that the § 1983 remedy is broader than any remedy available in state post-conviction proceedings, and thus that the state court proceeding does not provide him with an opportunity to fully air his federal claims.   (*Id*. at 12.)   As will be discussed, correct though that assertion may be, the *Heck* doctrine works as a limitation on the breadth of § 1983, barring claims that would otherwise be cognizable under that statute when they implicate the heart of habeas corpus relief.

Plaintiff's fifth and final objection is that the PF&R fails to adequately consider the case law referenced by the Plaintiff in his state habeas corpus petition.   (*Id*. at 13.)   Plaintiff attaches that petition to his Objections as "Appendix X."[12]   Plaintiff argues that the citations in his state habeas petition "should be considered when reciting the Defendant's two meager case cites." (*Id*.)[13]

---

[12] As described above, this document was not part of the record before the Magistrate Judge.

[13] In that petition, as in his complaint before this Court, Plaintiff heavily relies on West Virginia statutes and several West Virginia cases to support his federal constitutional claims.   (*See* ECF No. 8 at 9–10; ECF No. 64-2 at 118–132.) As noted above, this Court does not construe Plaintiff's Complaint to assert any state law claims.   Further, while these citations may be relevant to Plaintiff's pending petition for state habeas relief, West Virginia's interpretation of the federal constitution is not controlling on a federal court.   *See, e.g., Abrams v. W. Va. Racing Comm'n*, 263 S.E.2d 103, 106 (W. Va. 1980).   As such, this Court will analyze Plaintiff's constitutional claims with reference to the federal constitution and the decisions of federal courts.

For the reasons discussed below, this Court **OVERRULES** all of Plaintiff's Objections because all of the claims asserted in his current § 1983 action are barred by application of the doctrine announced by the Supreme Court in *Preiser* and *Heck*.[14]

In this case, Plaintiff is a state prisoner seeking injunctive and monetary relief from a federal court on the basis of alleged constitutional violations perpetrated by state officials during Plaintiff's trial and post-trial proceedings.   As such, his cause of action "lies at the intersection of the two most fertile sources of federal-court prisoner litigation—[42 U.S.C. § 1983] and the federal habeas corpus statute, 28 U.S.C. § 2254."   *Heck v. Humphrey*, 512 U.S. 477, 480 (1994).   As will be discussed below, the Supreme Court has harmonized these two statutes by funneling claims that seek traditional habeas relief exclusively through the habeas remedy, regardless of how those claims are styled.   *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."); *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) (summarizing post-*Preiser* developments in this area of the law and concluding that the overarching focus is on "the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement—either *directly*

---

[14] Plaintiff's Complaint asserts that his constitutional claims are brought against the several defendants "both individually and in their official capacities."   (ECF No. 8 at 1.)   To the extent Plaintiff seeks monetary damages from state officials acting in their official capacities, his claims are not cognizable under § 1983.   *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983").   Further, absent a state's waiver or valid congressional override, "the Eleventh Amendment bars a damages action against a State in federal court, a bar that remains in effect when state officials are sued for damages in their official capacity."   *Kentucky v. Graham*, 473 U.S. 159, 160 (1985).   In this case, these limitations are largely irrelevant because they do not apply to damages suits brought against state officials in their personal capacities.   *See Hafer v. Melo*, 502 U.S. 21 (1991).   This opinion addresses Plaintiff's claims against the defendants in their personal capacities, but it is nevertheless worth noting that Plaintiff is further barred from recovering against the defendants in their official capacities by operation of the doctrines described above.

14

through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody").

The Supreme Court first addressed this issue in *Preiser*, a case in which state prisoners brought claims, under both § 1983 and federal habeas corpus, challenging the state prison's revocation of the prisoners' "good-time" credits.   *Preiser*, 411 U.S. at 475.   The expressly desired remedy in the § 1983 claim was injunctive relief compelling restoration of the credits at issue.   *Id*. at 476.   However, because each of the prisoners that was a party to the case was eligible for immediate release upon a restoration of good-time credits, the effect of the requested injunction would have been their immediate release from confinement.   *Id*. at 476–77.   Phrasing the question presented as "whether state prisoners seeking such redress may obtain equitable relief under the Civil Rights Act, even though the federal habeas corpus statute . . . clearly provides a specific federal remedy," *id*. at 477, the Court concluded that for challenges to a prisoner's conviction or physical confinement, matters at the "core of habeas corpus," (*id*. at 489), the specific habeas remedy must control the more general § 1983 and provide the exclusive means for relief. *Id*. at 500 ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.").

The holding in *Preiser* applied only to civil rights actions seeking equitable relief to redress alleged constitutional violations.   *See Wilson v. Johnson*, 535 F.3d 262, 264 (4th Cir. 2008) (noting that *Preiser* decision "expressly limited its holding to the equitable relief sought by the prisoners").   A question left open by the Court's decision, however, was its applicability to § 1983 damages actions by currently confined prisoners.   While a suit seeking an injunction requiring

immediate release (or its equivalent) obviously infringes upon the habeas remedy, a suit seeking only money damages does not, at least directly, implicate the "core" of habeas corpus articulated in *Preiser*. *See Allen v. McCurry*, 449 U.S. 90, 104 (1980) (comparing § 1983 to the federal habeas corpus statute and noting that the purpose of the latter "is not to redress civil injury, but to release the applicant from unlawful physical confinement" (citing *Preiser*, 411 U.S. at 484)).   The Court addressed that issue in *Heck*, a decision that made clear that the rule announced in *Preiser* was one of substance rather than style.

In *Heck*, the § 1983 plaintiff was confined in a state prison in Indiana and brought suit against several state officials alleging an "unlawful, unreasonable, and arbitrary investigation" against him, knowing destruction of exculpatory evidence, and "illegal and unlawful" use of a voice identification procedure at trial. *Id*. at 479. The plaintiff in that case did not seek any injunctive or declaratory relief, but only compensatory and punitive damages for these allegedly unconstitutional actions. *Id*.   The Court acknowledged that the holding from *Preiser* did not specifically control the case. *Id*. at 481. Nonetheless, it extended the reasoning from that case to determine that where an action for damages, if successful, would "necessarily demonstrate[ ] the invalidity" of the plaintiff's conviction or sentence, *id*. at 481–82, it is not cognizable under § 1983 unless and until the plaintiff in such action shows a favorable termination of the criminal proceedings against him.   *Id*. at 487 (defining "favorable termination" as proof that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus").

16

Thus, the relevant inquiry for purposes of resolving conflicts with habeas corpus when a prisoner brings a § 1983 action is whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence.   As more recent Supreme Court precedent analyzing this area of the law has concluded:

> a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Wilkinson*, 544 U.S. at 81–82 (2005) (emphasis supplied).   Thus, where a prisoner challenges the conditions, rather than the fact or duration, of his confinement, § 1983 is an appropriate vehicle. *See Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus, . . . requests for relief turning on circumstances of confinement may be presented in a § 1983 action."). However, when that challenge goes to the very fact of confinement so as to contest its legality, habeas corpus must provide the remedy absent a favorable termination.

A primary consideration motivating the doctrine announced in *Heck* and *Preiser* is a comity-based concern that reading § 1983 broadly to allow claims seeking what is essentially habeas corpus relief would undermine the careful procedural requirements, long recognized by Supreme Court precedent and more recently codified in the federal habeas corpus statute, designed to promote respect for state administration of justice and limit undue federal interference therewith. *See Wilson*, 535 F.3d at 265 n.4.   Section 1983 and habeas corpus differ in several important respects, but perhaps the most important distinction in this context is that, while § 1983 does not require exhaustion of state remedies before resort to the federal cause of action, *see Monroe v.*

17

*Pape*, 365 U.S. 167, 183 (1961); *Patsy v. Board of Regents of Fla.*, 457 U.S. 496, 500–01 (1982), the federal habeas corpus statute explicitly does.   *See* 28 U.S.C. § 2254(b).

In both *Preiser* and *Heck*, the Supreme Court began its analysis by taking note of the differential requirements for exhaustion of state remedies across § 1983 and habeas corpus. *Preiser*, 411 U.S. at 477; *Heck*, 512 U.S. at 480–81.   It was in recognition of this practical consideration that the need to harmonize conflict between the two statutes became especially acute. Limitations on suits for equitable relief that would require immediate or expedited release, as well as imposition of a favorable termination requirement on damages actions that would achieve the same result, are thus critically important to the "practical objective of preserving limitations on the availability of habeas remedies."   *Muhammad*, 540 U.S. at 751.   The *Preiser/Heck* doctrine has always been driven, then, by a concern, rooted in notions of federalism and comity, for preventing § 1983 plaintiffs from circumventing the state exhaustion requirement of habeas corpus.   *See Harvey v. Horan*, 278 F.3d 370, 377 (4th Cir. 2002) (emphasizing the way in which Supreme Court precedent "stressed that the exhaustion requirement 'is rooted in considerations of federal-state comity,' and that Congress has decided that exhaustion of state remedies in cases where a state prisoner challenges the fact or duration of his confinement 'will best serve the policies of federalism'" (quoting *Preiser*, 411 U.S. at 491–92 & n.10)).

With these principles in mind, it is clear from the face of Plaintiff's Complaint that granting the relief requested would directly undermine the state exhaustion requirement and require this Court to impugn the validity of Plaintiff's conviction and continued confinement.   As noted above, Plaintiff currently has a habeas corpus proceeding pending in state court.   Before he can file for federal habeas relief, he must first allow that proceeding to conclude.   Under *Heck*, he

18

must similarly await favorable termination of any criminal conviction or sentence before he can proceed with a § 1983 claim that, as Plaintiff's does, seeks damages for illegal incarceration. Plaintiff cannot demonstrate such a favorable termination, and the fact that he is dissatisfied with the pace at which state habeas proceedings are unfolding does not change that analysis.

Plaintiff's pending action for state habeas relief asserts thirty six (36) grounds for reversing his state conviction.  (ECF No. 64-2.)  Three of these grounds raise the same arguments concerning the issue of missing transcript portions raised in this Complaint.  (*Id*. at 78–79, 118–134).  Plaintiff has thus extracted three of the grounds asserted for state habeas relief in a pending proceeding and alleged them in federal court in a § 1983 claim in an attempt to, among other things, force the state court hearing those habeas proceedings to expedite that process.   However, where his requested relief in the state proceedings is reversal of convictions, vacation of sentences, and a new trial, the relief he seeks here is an order from this Court forcing the state habeas judge to award such relief and an additional damages award against the state officials allegedly responsible for the same constitutional infirmities.   Fairly construed, what the Complaint is really after is a release from confinement and a new trial.

Although the constitutional foundation for Plaintiff's claim is murky, it is based on the Fourteenth Amendment right to pursue a meaningful appeal based on a sufficiently complete transcript of criminal trial proceedings.   As noted above, Plaintiff relies primarily on West Virginia case law to support his claim, and he is right to point out that the West Virginia Supreme Court has broadly recognized a criminal defendant's constitutional right to access his trial transcript, regardless of the defendant's indigence.  *See State ex rel. Johnson v. McKenzie*, 226 S.E.2d 721, 724 (W. Va. 1976) (where a plaintiff complains of the failure of a state-employed

court reporter to provide a trial transcript, "the failure to provide a trial transcript upon a timely request is no less a violation of due process" when the asserted basis for denial is not the defendant's indigence).   At the federal level, the constitutional right Plaintiff claims is less obvious.   On the one hand, it is well-established that a state cannot, consistent with the requirements of due process and equal protection, condition a criminal defendant's right to appeal on that defendant's ability to finance such an appeal.   *See, e.g.*, *Griffin v. Illinois*, 351 U.S. 12, 19 (1956) ("There can be no equal justice where the kind of trial a man gets depends on the amount of money he has.   Destitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts.").

Moreover, with respect to trial transcripts specifically, the federal Court Reporters Act, 28 U.S.C. § 753(b) ("CRA"), provides that "[e]ach session of the court" be "recorded verbatim" in certain prescribed ways in order to ensure, among other things, a criminal defendant's ability to appeal.   *Id*; s*ee also United States v. Taylor*, 303 F.2d 165, 169 (4th Cir. 1962).   Federal courts have found that a missing or incomplete trial transcript, in noncompliance with the federal statute, will warrant a new trial where an appellant can "demonstrate that the missing portion of the transcript specifically prejudices his appeal."   *United States v. Gillis*, 773 F.2d 549, 554 (4th Cir. 1985) (citing *United States v. Snead*, 527 F.2d 590, 591 (4th Cir. 1975)).   In this case, Plaintiff does not directly base his claim on either of the described federal protections.   Although he asserts his indigence, he does not allege that the transcript portions at issue in this case were denied him on that basis.   He has several theories as to why the transcript portions have not been provided, but none of them appear to relate to Plaintiff's status as an indigent.   Moreover, because he was originally tried in state rather than federal court, the requirements of the CRA do not directly apply.

20

Nonetheless, the Fourth Circuit has held that "[a] criminal defendant has a right to a meaningful appeal based on a complete transcript." *United States v. Huggins*, 191 F.3d 532, 536 (4th Cir. 1999) (citing *Hardy v. United States*, 375 U.S. 277, 279 (1964)). And the prejudice standard described above and applied to new trial determinations under the CRA is instructive in determining the appropriate remedy for a violation of a criminal defendant's right to appeal based on missing or inaccurate trial transcripts. *See United States v. Weisser*, 417 F.3d 336, 342 n.2 (2d. Cir. 2005) (applying the prejudice standard used in the CRA context to a situation not covered by that act where the situation presented "raised[d] the same concern—*i.e.*, the likelihood that reversible error occurred, but cannot be discerned due to gaps in the record on appeal" (citation omitted)); *Dyches v. Martin*, No. CIV.A. 1:12-2838-SB, 2014 WL 1093133, at *3 (D.S.C. Mar. 17, 2014) (noting that a plaintiff's constitutional rights would be violated "'if inaccuracies in the transcript adversely affected the outcome of the criminal proceedings,' and that the constitutional question turned on whether "the Plaintiff has alleged deficiencies in his transcripts substantial enough to call into question the validity of his criminal proceedings and the appellate process" (quoting *Tedford v. Hepting*, 990 F.2d 747, 747 (3d. Cir. 1993)) *aff'd.*, 579 F. App'x 162 (4th Cir. 2014).

In this case, Plaintiff makes specific allegations that his rights were prejudiced because the missing trial transcripts prevented him from raising "Instructional Errors" on direct appeal. (ECF No. 8 at 10.) Regardless of the merits of such a claim, if Plaintiff is successful in showing prejudice, then he will have impugned the continued vitality of his conviction. *See Dyches*, 2014 WL 1093133, at *4 (noting that a successful claim based on inaccuracies in a trial transcript would necessarily make a showing that the criminal proceeding had been adversely affected, thus

implying the invalidity of conviction and implicating *Heck*).   Thus, any damages awards associated with the constitutional violations would demonstrate the invalidity of Plaintiff's conviction and subsequent confinement based on an impaired right to appeal.   *See Tedford*, 990 F.2d at 749 (3d Cir. 1993) (noting that, where a plaintiff filed a § 1983 claim seeking a declaration that his constitutional rights on appeal had been violated, as well as punitive and compensatory damages, there could be no damages until the constitutional violation was proven and that a "§ 1983 action is not the appropriate vehicle for setting aside the conviction and sentence").

Perhaps recognizing, for the reasons discussed above, that a § 1983 suit is not the proper vehicle to achieve Plaintiff's desired result, Plaintiff does not ask this Court directly to award him a new trial or invalidate his conviction or sentence.   Nonetheless, he requests relief that, if awarded, would result in the reversal of Plaintiff's conviction, the vacation of his sentence, a new trial, and a damages award punishing the named defendants and compensating Plaintiff for suffering false imprisonment and illegal incarceration.   The Supreme Court has made clear that a complaint seeking that kind of judgment "must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."   *Heck*, 512 U.S. at 487.   However a claim is styled, if its direct result or necessary implication is to impugn the lawfulness of a conviction or sentence, and that conviction or sentence has not already been favorably terminated in the manner announced in *Heck*, then it is not cognizable under § 1983.   *See Wilkinson*, 544 U.S. at 81 (noting the Court's focus on "the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement— either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody").   Plaintiff's

submissions as to his ongoing state habeas proceedings demonstrate that neither his conviction nor his sentence have been so terminated.

Plaintiff's first request for relief is an order from this Court directing Judge Stephens to adjudicate pending motions in the state habeas proceeding and to give appropriate relief (presumably in that proceeding) for the constitutional violations claimed here, in the form of reversing Plaintiff's conviction, vacating his sentence, and ordering a new trial.  (ECF No. 8 at 28.)    In the PF&R, the Magistrate Judge characterized this prayer for relief as an improper request for a writ of mandamus.  (ECF No. 60 at 16.)   Plaintiff did not object to that characterization or the Magistrate's recommendation to not award this particular form of relief, and thus this Court has no obligation to conduct a de novo review of the Magistrate's finding on that issue.  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  However, the Court notes that while a federal court may, under extraordinary circumstances, have jurisdiction to issue a writ of mandamus against a state court, *Craigo v. Hey*, 624 F. Supp. 414, 416 (S.D. W. Va. 1985) (citing *Bucolo v. Adkins*, 424 U.S. 641 (1975)), that authority exists "for the sole purpose of protecting the jurisdiction of the federal courts.  Thus, federal courts have no power to issue a writ of mandamus in an original action brought for the purpose of securing relief by the writ . . . ."  *Id*. Because Plaintiff's request is in the form of an original action, rather than a petition to force compliance with an order of this Court, this Court has no jurisdiction to grant relief in the form of ordering a state official to perform any of the requested tasks.

Plaintiff's other requested forms of relief seek to impose personal responsibility on the named defendants for allowing the constitutional violation described above to occur.  Because Plaintiff adamantly asserts that that his confinement in the face of this constitutional violation is

23

unconstitutional, a damages award in line with that requested would necessarily require this Court to call into question the validity of Plaintiff's continued confinement.   For one, he seeks punitive and exemplary damages for the "wanton and wicked conduct" of the defendant government officials, specifically for subjecting him to "cruel and unusual punishment, false imprisonment, living under constant threat of violence to the person."   (ECF No. 8 at 28.)   Although Plaintiff does acknowledge that "his incarceration may have been initially by a valid conviction," (*id*. at 9), he argues that the defendants' constitutional failures with respect to the transcript at issue "renders sentence void."   (*Id*. at 10.)   To award damages based on false imprisonment pursuant to a void sentence would be to acknowledge that Plaintiff is being falsely imprisoned and to imply the invalidity of his conviction.

The same result obtains with respect to Plaintiff's prayer for compensatory, actual, general, and foreseeable damages, because all requested damages flow from a finding that Plaintiff's constitutional rights have been violated, and more importantly that such violation renders his continued incarceration unlawful and unconstitutional.   Plaintiff's requested damage awards are based on his overarching contention that his continued incarceration, imposed without the opportunity to access the complete trial record for purposes of preparing an appeal or a habeas petition, is unlawful.   (*See, e.g.*, *id*. at 18 (arguing that the actions of the defendants' were "denying [Plaintiff] his constitutional right to Appeal his criminal conviction thus resulting in his illegal detention in a Correctional Complex for life without recourse").)

Because as alleged in the Complaint his sentence is void and his confinement is unlawful, Plaintiff seeks a damage award from those parties he deems responsible for the constitutional violations creating the alleged unlawful confinement.   Awarding such damages would necessarily

24

call into question the legality of Plaintiff's confinement.   Until Plaintiff is granted termination of that confinement through proof that either "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus," *Heck*, 512 U.S. at 487, Plaintiff cannot pursue his claims through § 1983.   As his claim is not yet cognizable, it fails to state a claim upon which relief can be granted and is dismissed without prejudice until such time as Plaintiff can demonstrate the requisite favorable termination.   *See id*. at 490 (upholding lower court's dismissal without prejudice pending petitioner's ability to achieve favorable termination); *Omar v. Chasanow*, 318 F. App'x 188 (4th Cir. 2009) (per curiam) (concluding that appropriate disposition of § 1983 claims barred by the *Heck* doctrine is dismissal without prejudice to later ability to refile claims upon favorable termination).[15]

---

[15] The Court dismisses this action without prejudice; it does not characterize Plaintiff's claim as a habeas corpus petition under 28 U.S.C. § 2254.   Because Plaintiff's state post-conviction proceedings are ongoing, he has not exhausted his state remedies and habeas corpus review before this Court would be improper.   *See* 28 U.S.C. § 2254(b)(1).   Moreover, to the extent he seeks a damages remedy, "habeas corpus is not an appropriate or available federal remedy."   *Preiser*, 411 U.S. at 494.   As such, the ruling in this case does not require that any future petition by the plaintiff for habeas corpus relief be treated as a "second or successive" petition within the meaning of 28 U.S.C. 2244(b) or otherwise encumber Plaintiff's future ability to petition a federal court for such relief should his state habeas corpus petition prove unsuccessful.   The *Heck* doctrine simply recognizes that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated."   *Heck*, 512 U.S. at 489–90.   Where such damages are sought, a prisoner "must seek federal habeas corpus relief (or appropriate state relief) instead."   *Wilkinson*, 544 U.S. at 78.   Dismissal on *Heck* grounds thus encourages, even requires, resort to habeas corpus as the appropriate vehicle for determining the issue of whether the prisoner's conviction or sentence is actually invalid.   *See Muhammad*, 540 U.S. at 751 (noting that *Heck*, where it applies, requires petitioners "to resort to state litigation and federal habeas before § 1983").   The dismissal in this case merely requires that Plaintiff first demonstrate the invalidity of his conviction or sentence by appropriate means before seeking damages for illegal imprisonment under § 1983.   As habeas corpus is explicitly sanctioned in *Heck* as an appropriate means for demonstrating such invalidity, and Plaintiff has not previously sought federal habeas relief, this dismissal does not prejudice his future ability to pursue such relief.   *See Bell v. Defricke*, No. CIV.A 3:07CV522, 2008 WL 4279468, at *3 n.2 (E.D. Va. Sept. 17, 2008) (finding the plaintiff's claims to be *Heck*-barred and noting that "[i]f Plaintiff wishes to file a complaint challenging his conviction and sentence in this Court, he must file a petition for habeas corpus relief under 28 U.S.C. § 2254 after exhausting his state court remedies." (citing *Muhammad*, 540 U.S. at 751 and *Preiser*, 411 U.S. at 500)).

25

Because Plaintiff's claims are barred by *Heck*, the Court does not need to address the alternative finding in the PF&R that the operation of *Younger* requires abstention, the Plaintiff's objections thereto, or the other bases for dismissal asserted in the Defendants' motions to dismiss.

## IV.     Conclusion

If the transcript of Plaintiff's trial has indeed been lost, that is a troubling development for due process.   While Plaintiff may have an opportunity to bring claims relating to the alleged loss of the transcript to this Court to seek redress at some future point, the state court should have the first opportunity to address those claims.

For the reasons discussed above, the Court **OVERRULES** Plaintiff's Objections, (ECF No. 64), **ADOPTS** the PF&R, (ECF No. 60), to the extent it is consistent with this Memorandum Opinion and Order, **GRANTS** the motions to dismiss, (ECF Nos. 26 & 30), **DISMISSES WITHOUT PREJUDICE** the case, and **DIRECTS** the Clerk to remove this action from the Court's docket.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        October 28, 2015

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE